MARY VON ARX v. JAMES WEMPLE'S EXECUTORS.

An executor who has taken an order to limit creditors under section 59 of the Orphans' Court act, may at any time thereafter have the estate declared insolvent under section 91; but *quære*, whether execution upon a judgment can be stayed unless application is made under section 82?

In debt.

The following facts are agreed upon by the attorneys of the above-named parties, to be used on the argument of the rule to show cause why the execution issued in the above case, and now in the hands of the sheriff of the county of Union, should not be set aside, viz.:   The said James Wemple, a resident of the city of Elizabeth, Union county, New Jersey, died January 28th, 1879, leaving a last will and testament, which was proved by the above-named defendants, the executors therein named, February 8th, 1879.   The household furniture, &c., in the homestead of the deceased, at Elizabeth, New Jersey, were inventoried by James W. Fisher, one of the executors, and the inventory filed in the office of the surrogate of the county of Union March 6th, 1879, Rebecca A. Wemple, the above-named executrix, refusing to sign said inventory.   An order to limit creditors, under the fifty-ninth section of the Orphans' Court act, was taken out February 8th, 1879, under which order the creditors of said estate were required to present their claims to the said executors on or before November 8th, 1879.   The above-named plaintiff proved her claim, and filed the same with the executors, before the expiration of the

time limited in said order, which claim is not disputed by the said executors. November 1st, 1879, the above-named plaintiff commenced her action in this court against the said executors, upon said claim so filed with the said executors, and December 13th, 1879, obtained judgment by default against the said executors for the sum of $1206.59, the real debt, damages and costs of the suit. The plaintiff thereupon issued execution upon said judgment, and the sheriff of the county of Union, December 17th, 1879, levied upon the said household furniture, &c., and all the furniture, &c., inventoried by the said James W. Fisher, executor as aforesaid, as belonging to said estate. Before the said levy was made by the said sheriff, James W. Fisher, the said executor, had advertised the said furniture, &c., to be sold at public auction on December 22d, 1879. The personal property contained in said inventory, and in the levy made by the said sheriff, is all the property of said estate, as far as we are informed, from the proceeds of which the indebtedness of the said James Wemple, deceased, and the expenses of administering the estate can be paid. December 20th, 1879, Benjamin S. Many, holding a chattel mortgage upon the said furniture, &c., given to him after the death of the testator by the said Rebecca A. Wemple individually, as owner of the same, after the inventory was filed, filed his bill in the Court of Chancery of this state against the said executors, and against the said Rebecca A. Wemple individually, for the purpose of settling the title to the goods and chattels contained in the said chattel mortgage, and obtained an injunction against the said executors, and the said Rebecca A. Wemple individually, from selling or attempting to sell, or disposing of, removing, or in any way interfering with the goods and chattels named in said chattel mortgage, which injunction is still in force. Upon the service of said injunction, the sale of said furniture, &c., by the said James W. Fisher, executor as aforesaid, was stopped, and which suit of said Benjamin S. Many in the Court of Chancery is still pending, and will be proceeded with to final decree. January 6th, 1880, the said Rebecca A. Wemple, exec-

utrix as aforesaid, was removed from her office as such exec-
utrix by the decree of the Orphans' Court of the county of
Union, and the letters testamentary granted to said Rebecca
A. Wemple were revoked by said Orphans' Court, and the
said executrix was ordered forthwith to deliver the moneys,
goods and chattels, effects and choses in action, belonging to
said estate, which have come to her hands, to said James W.
Fisher, executor as aforesaid.

Argued at November Term, 1880, before Justices VAN
SYCKEL and MAGIE.

For the plaintiff, *Alward & Parrot.*

For the defendant, *R. E. Chetwood.*

The opinion of the court was delivered by

VAN SYCKEL, J.     The plaintiff commenced her action
November 1st, 1879, and obtained judgment December 13th,
1879.

The order to limit creditors was taken out February 8th,
1879, under section 59 of the Orphans' Court act. *Rev., p.*
764.

The question is, whether the plaintiff's execution should be
stayed.

Section 82 of the Orphans' Court act (*Rev., p.* 770,) pro-
vides that when any executor or administrator shall, by appli-
cation in writing, represent that the personal and real estate
of the decedent is insufficient to pay his debts, the said court
shall direct the executor or administrator to give notice to
creditors to bring in their claims within such time as the
court shall direct, not exceeding eighteen nor less than six
months.

Section 88 of the same act provides that if any action be
pending against said executor or administrator, at the time of
making the application in the eighty-second section mentioned,
or be brought against such executor or administrator after the

Von Arx v. Wemple's Ex'rs.

making of such application, the plaintiff may proceed to final judgment therein, but no execution shall in any case issue after the making of said application.

Section 82 is a copy of the third section of the act concerning persons who die insolvent (*Elmer's Dig.* 169), and section 88 is a copy of the twelfth section of the same act. *Elmer's Dig.* 171.

In *Howell's Adm'rs* v. *Potts' Adm'rs, Spenc.* 1, these sections were construed to mean that the right to execution should be denied only where suit is pending when or is commenced after the executor or administrator made the application under section 3.

Sections 22 and 24 of the act of March 17th, 1855, were passed to remedy a defect in the prior legislation.

These sections were construed by Mr. Justice Dixon, in *Taylor* v. *Volk's Ex'x,* 9 *Vroom* 204, to provide that if any action is pending at the time of making the order under section 22, or be commenced after such order is made, then no execution can issue until ten months after making such order, and if within those ten months the executor shall declare the estate insolvent under section 24, no execution can issue thereafter.

Section 59 of the Orphans' Court act (*Rev., p.* 764,) is substantially section 22 of the act of 1855. *Nix. Dig.* 653.

Section 24 of the act of 1855, giving the executor ten months to ascertain whether the estate is insolvent, is not re-enacted in the Revision.

The eighty-eighth section of the Orphans' Court act is now the one restraint on issuing execution against the goods of the decedent, and that, literally interpreted, applies only where an order has been made under section 82.

Section 91 authorizes the court to decree the estate to be insolvent where the executor or administrator has taken the order under section 59, provided notice is given with the report of claims, that an application will be made for such decree; but there is nothing in this section which authorizes a stay of execution under such proceedings.

It appears to have been the intention of the revisor to substitute section 91 for section 24 of the act of 1855, which was dropped out, and instead of allowing the executor ten months within which to ascertain whether the estate was insolvent, to enable him to declare it insolvent at any time after the rule to bar creditors was taken under section 59, but there is an absence of any provision to stay execution in this contingency.

It will be manifestly against the policy of the provisions of the Orphans' Court act concerning insolvent estates to permit execution to go, where notice of the application has been given to declare the estate insolvent under section 91. Such a practice would render section 91 practically useless, as the executor would be driven to proceed anew under section 82, and would be deprived of time to ascertain the condition of the estate. Clearly that could not have been the purpose of the framer of this statute. But whether, under the language used, the judgment creditor, where the notice has been given under section 91, can be held to be under the same disability to issue execution as if the personal representative had originally made his application under section 82, is a question which it is not necessary to decide now.

The executor has done nothing in this case save the taking out of an order under section 59, and there is nothing, therefore, to arrest the right of the judgment creditor to resort to final process in order to realize what is due him.

No application has been made to decree the estate so be insolvent, and such application may never be made.

The motion to set aside the execution should be denied.